**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| PATRICK GALLO, individually and on behalf of all others similarly situated, et al., | Civil No. 12-1117 (NLH/KMW) |
| Plaintiff, | OPINION |
| v. | |
| PHH MORTGAGE CORPORATION, | |
| Defendant. | |

**APPEARANCES:**

Edward W. Ciolko, Esquire
Peter Houghton Levan , Jr., Esquire
Shannon O. Lack, Esquire
Donna Siegel Moffa, Esquire
Kessler Topaz Meltzer & Check, LLP
280 King of Prussia Road
Radnor, Pennsylvania 19087
        and
Lisa J. Rodriguez, Esquire
Nicole M. Acchione, Esquire
Trujillo Rodriguez & Richards, LLC
258 Kings Highway East
Haddonfield, New Jersey 08033
        *Attorneys for Plaintiff Patrick Gallo*

Peter J. Leyh, Esquire
Braverman Kaskey P.C.
One Liberty Place, 56th Floor
1650 Market Street
Philadelphia, Pennsylvania 19103
        *Attorney for Defendant PHH Mortgage Corporation*

**HILLMAN, District Judge**

        This matter comes before the Court by way of Defendant PHH

Mortgage Corporation's motion [Doc. No. 20] to dismiss Plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  The Court has considered the parties' submissions[1] and decides this matter pursuant to Federal Rule of Civil Procedure 78.

For the reasons expressed below, Defendant's motion to dismiss Plaintiff's First Amended Class Action Complaint is granted in part and denied in part.

I.   **JURISDICTION**

The Court exercises jurisdiction in this matter pursuant to 28 U.S.C. § 1332(d)(2), the Class Action Fairness Act, because the Plaintiff is a citizen of a state different than Defendant, the matter in controversy exceeds $5,000,000, and there are more than 100 members in the proposed class.  The Court also exercises diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) with respect to Plaintiff's state law claims because this matter is between citizens of different states and the amount in controversy exceeds $75,000.

---

[1] In addition to Defendant's moving brief [Doc. No. 20], Plaintiff's brief in opposition [Doc. No. 25], and Defendant's reply brief [Doc. No. 30], the parties filed several supplemental sources of authority in support of their respective positions. (See [Doc. Nos. 39, 40, 42, 43, 44, 45].)  In deciding the pending motion, the Court considered each of these additional submissions.

## II.   <u>BACKGROUND</u>

In this proposed class action, Plaintiff Patrick Gallo brings claims against Defendant PHH Mortgage Corporation (hereinafter, "PHH Mortgage") on behalf of himself, and all other similarly situated "homeowners who have or had residential mortgage loans owned and/or serviced by Defendant PHH Mortgage ... and, in connection therewith, were required to pay for lender-placed or 'force-placed' hazard insurance policies." (First Am. Class Action Compl. [Doc. No. 19] (hereinafter, "Am. Compl."), ¶ 1.)  As described by several Circuit Courts of Appeals, a lender-placed or force-placed insurance policy is a policy "which insures the lender's collateral when the borrower fails to maintain a specific type of insurance [typically one required under the mortgage agreement].  A force-placed policy allows the lender to protect its exposure on a property up to the amount of the mortgage on the date of issuance."  <u>Williams v. Certain Underwriters At Lloyd's of London</u>, 398 F. App'x 44, 45 (5th Cir. 2010); <u>see also</u> <u>Caplen v. SN Servicing Corp.</u>, 343 F. App'x 833, 834 (3d Cir. 2009) ("Under the terms of the note and mortgage, the [homeowners] agreed to carry hazard insurance on the property and to provide evidence of insurance to the bank; if they failed to do so, the bank was authorized to 'force place' insurance on the property - that is, to independently obtain insurance and add the cost of the premiums to the principal due

3

under the note - in order to protect its security interest in the property.")

On May 22, 2006, Plaintiff obtained a refinance loan in the amount of $126,000 from PHH Mortgage,[2] and the obligation to repay that loan was secured by a mortgage recorded on Plaintiff's residential property located at 233 Leon Avenue in Norwood, Pennsylvania. (Am. Compl. ¶ 1; Br. in Supp. Of Def.'s Mot. To Dismiss Pl.'s First Am. Class Action Compl. [Doc. No. 20] (hereinafter, "Def.'s Br."), 3.)[3] Approximately seventeen months later, on October 24, 2007, Plaintiff and PHH Mortgage entered into a Loan Modification Agreement which: (1) provided for a fixed, rather than adjustable, interest rate; and (2) amended and supplemented the mortgage and note for a loan balance in the amount of $138,240.77. (Am. Compl. ¶ 16; Def.'s Br. 3.) Under Plaintiff's mortgage, both before and after the loan modification, Plaintiff was required to maintain hazard insurance coverage for the Leon Avenue property. (Am. Compl. ¶ 17; Def.'s

─────────────

[2] At this point, the Court does not address the argument mentioned only in footnotes in the parties' briefs that Plaintiff Patrick Gallo may not be a proper Plaintiff to this action. The Court cannot fairly evaluate these arguments, relegated to only two brief footnotes, without the benefit of more formal briefing. Should the parties seek formal resolution of this issue at a later date, a motion on this specific issue would be the more appropriate method for determining Plaintiff's status in this action.

[3] As set forth herein, the facts are taken from Plaintiff's Amended Complaint and, unless otherwise noted, are not disputed by Defendant for purposes of this motion. (Def.'s Br. 3.)

Br. 3.)  Pursuant to that requirement, Plaintiff obtained a
homeowner's insurance policy underwritten by Lititz Mutual
Insurance Company ("the Lititz Policy") which provided coverage
for the dwelling, other structures, personal property, and loss
of use.  (Am. Compl. ¶ 17.)  The Lititz Policy was renewed
annually but . was cancelled effective February 28, 2008 due to
nonpayment of the annual renewal premium of $933 by Plaintiff.
(Am. Compl. ¶ 17; Def.'s Br. 3.)

Several months after the Lititz Policy was cancelled,
Defendant PHH Mortgage secured force-placed hazard insurance for
the Leon Avenue property pursuant to the terms of the mortgage.
(Def.'s Br. 3.)  Defendant PHH Mortgage obtained this force-
placed hazard insurance policy through a provider of its choice –
American Security, a subsidiary of Assurant, Inc.[4]  The policy
had an annual premium of $1,656, nearly twice the annual premium
for the Lititz Policy.  (Am. Compl. ¶ 17; Def.'s Br. 3.)  The
amount of the premium for the force-placed policy was charged to
the escrow account associated with Plaintiff's loan on May 15,
2008, but the force-placed policy was backdated to have an
effective date of February 28, 2008 – the date the Lititz Policy
was cancelled for nonpayment.  (Am. Compl. ¶ 19; Def.'s Br. 3.)
According to Plaintiff, the force-placed policy PHH Mortgage

---

[4] Neither American Security nor Assurant, Inc. were named as
Defendants in this action.

procured from American Security provided coverage in the amount of $166,000 for the dwelling only and thus provided "substantially less coverage than" than the Lititz Policy. (Am. Compl. 20.)

The force-placed policy Defendant PHH Mortgage obtained for Plaintiff through American Security was subsequently renewed on February 28, 2009 and again on February 28, 2010, with the $1,656 premium being charged to Plaintiff's escrow account approximately one to two weeks later in each instance. (Am. Compl. ¶¶ 20-21; Def.'s Br. 4.) As permitted under the mortgage, Plaintiff later obtained a new homeowner's insurance policy through Allstate Insurance Company ("the Allstate Policy"), effective September 8, 2010, with an annual premium of approximately $945.42. (Am. Compl. ¶ 22; Def.'s Br. 4.) Upon Plaintiff obtaining the Allstate Policy, Defendant PHH Mortgage cancelled the force-placed insurance policy through American Security and later issued Plaintiff a partial refund in the amount of $785.

It is within this factual context that Plaintiff's present claims arise. As set forth in the Amended Complaint, Plaintiff challenges, *inter alia*, Defendant PHH Mortgage's "practice of purchasing force-placed hazard insurance from a provider pursuant to an agreement that returns a financial benefit to Defendant and/or its affiliates that is unrelated to any contractual or other bona fide interest in protecting PHH's interest in the

loan, and which results in unauthorized, unjustified and unfairly inflated costs to the borrower for force-placed hazard insurance in violation of law." (Am. Compl. ¶ 4.) Plaintiff alleges that Defendant PHH Mortgage has negotiated and entered into pre-arranged agreements with force-placed insurance providers, including subsidiaries of Assurant, Inc., such as American Security, whereby Defendant receives fees, payments, commissions, kickbacks, or other things of value from the force-placed insurance providers. (Am. Compl. ¶¶ 5-7.) According to Plaintiff, these pre-arranged agreements result in Defendant purchasing unconscionably high-priced insurance policies in order to maximize its own profits to the detriment of borrowers, and that such actions "constitute a pattern of exploitative profiteering and selfdealing against the interest of Plaintiff and the Class and in violation of the law." (Id. ¶ 6.)

Accordingly, Plaintiff asserts three claims in this case. Count One is a breach of contract claim which also includes a claim that Defendant breached the implied covenant of good faith and fair dealing. (Am. Compl. ¶¶ 75-85.) Count Two asserts a claim for unjust enrichment and disgorgement. (Id. ¶¶ 86-90.) Count Three is a claim for violations of the New Jersey Consumer Fraud Act. (Id. ¶¶ 91-101.)

## III. __DISCUSSION__

At this time, Defendant PHH Mortgage moves for the dismissal of Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  In considering Defendant's motion, the Court must accept all well-pleaded allegations in the Amended Complaint as true and view them in the light most favorable to the plaintiff.  Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005).  It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims[.]'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1953 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions[.]'") (citation omitted).  First, under the Twombly/Iqbal standard, a district court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions."  Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Iqbal, 129 S. Ct. at 1949).

Second, a district court "must then determine whether the

facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" <u>Fowler</u>, 578 F.3d at 211 (citing <u>Iqbal</u>, 129 S. Ct. at 1950). "[A] complaint must do more than allege the plaintiff's entitlement to relief." <u>Fowler</u>, 578 F.3d at 211; <u>see also</u> <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 234 (3d Cir. 2008) ("The Supreme Court's <u>Twombly</u> formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element.") (citing <u>Twombly</u>, 550 U.S. at 556). "The defendant bears the burden of showing that no claim has been presented." <u>Hedges v. U.S.</u>, 404 F.3d 744, 750 (3d Cir. 2005).

## IV.  <u>ANALYSIS</u>

Defendant offers four primary arguments in seeking to dismiss Plaintiff's claims. Initially, PHH Mortgage argues that all of Plaintiff's claims are barred by the filed rate doctrine because the rates Plaintiff was charged for the force-placed insurance policy were filed with, and approved by, the Pennsylvania Department of Insurance making them *per se* reasonable and unchallengeable in a judicial proceeding. (Def.'s

Br. 2.)  Second, Defendant asserts that Plaintiff's breach of
contract claim fails because he does not identify a specific duty
that was breached but rather reads nonexistent terms into the
mortgage, and, further, that the claim is barred by the voluntary
payment doctrine.  (Id.)  Defendant also contends that because no
specific contractual duty was breached, Plaintiff's claim for
breach of the implied covenant of good faith and fair dealing,
standing alone, must fail.  (Id. at 2, 11.)  Defendant's third
argument attacks the viability of Plaintiff's cause of action for
unjust enrichment.  Defendant asserts that this claim cannot be
maintained in light of the existence of an express contract
between the parties – here, the mortgage agreement.  (Id. at 2.)
Defendant similarly contends that the unjust enrichment claim is
also barred by the voluntary payment doctrine.  (Id.)  Finally,
Defendant argues that Plaintiff's claim under the New Jersey
Consumer Fraud Act ("CFA") should be dismissed because: (1)
choice-of-law rules dictate that Pennsylvania, Plaintiff's home
state, has the most significant relationship to this claim; and
(2) Plaintiff's CFA claim fails to meet the heightened pleading
requirements for such claims.  (Id.)  The Court addresses each of
Defendant's arguments in turn.

    **A.**   **The Filed Rate Doctrine**

As explained by the Third Circuit, "[t]he filed rate
doctrine provides that a rate filed with and approved by a

governing regulatory agency is unassailable in judicial proceedings brought by ratepayers."  Alston v. Countrywide Fin. Corp., 585 F.3d 753, 763 (3d Cir. 2009) (citing Wegoland Ltd. v. NYNEX Corp., 27 F.3d 17, 18 (2d Cir. 1994)).  The filed rate doctrine applies in circumstances where a plaintiff is challenging the "reasonableness or propriety of the rate[s]" themselves.  Alston, 585 F.3d at 765.

Relying primarily on Stevens v. Union Planters Corp., No. 00-CV-1695, 2000 WL 33128256, at *3 (E.D. Pa. Aug. 22, 2000) and Pennsylvania Statute Annotated §§ 710-5(a) and 710-7,[5] Defendant argues that because property insurance rates must be filed with and approved by the Pennsylvania Department of Insurance and because the Department of Insurance may disapprove of those rates it deems excessive, the rates Plaintiff paid for his force-placed insurance policy is per se reasonable and cannot be challenged in this judicial proceeding.  (Def.'s Br. 7-8.)  Defendant's argument in this regard is premised almost entirely on its own narrow classification of Plaintiff's claims in this case. Defendant asserts that Plaintiff's "contention [in this case is]

---

[5] Plaintiff disputes Defendant's contention that Pennsylvania law governs the Court's analysis under the filed rate doctrine because the mortgage contract's choice-of-law clause is "narrowly crafted."  (Br. in Opp'n to Def.'s Mot. To Dismiss Pl.'s First Am. Compl. [Doc. No. 25] (hereinafter, "Pl.'s Opp'n"), 8 n.6).  However, the Court does not resolve this issue in light of Plaintiff's further contention that the Court's analysis under the filed rate doctrine would be the same regardless of whether the Court applied Pennsylvania law.  (Id.)

that he was overcharged for lender-placed insurance" and that the Amended Complaint is premised upon "the allegation that PHH charged rates for lender-placed insurance that where 'excessive, unreasonable, and unnecessary.'" (Def.'s Br. 7-8) (citing Am. Compl. ¶¶ 6, 61, 81(d), 96(d).)

Plaintiff counters that he is not in fact challenging the reasonableness of the rates he paid for the force-placed insurance, but rather is challenging PHH Mortgage's alleged improper conduct and the payment of kickbacks, commissions, or other financial benefits paid to Defendant by force-placed insurance providers, such as American Security, pursuant to pre-arranged agreements between them.  (Br. in Opp'n to Def.'s Mot. To Dismiss Pl.'s First Am. Compl. [Doc. No. 25] (hereinafter, "Pl.'s Opp'n"), 6); (see also Pl.'s Opp'n 7) ("Plaintiff challenges the manner in which PHH [Mortgage] force-placed his insurance and PHH's manipulation of force-placed insurance process for its own gain, ... rather than the reasonableness of the rate charged[.]")

Although Alston was decided in the context of a case where the plaintiffs alleged a violation of the Real Estate Settlement Procedures Act and no such claim is made here,[6] the Court still

_____

[6] Plaintiff's original Class Action Complaint previously alleged a claim under the Real Estate Settlement Procedures Act. (See Class Action Compl. [Doc. No. 1] ¶¶ 96-104.)  However, by joint stipulation of the parties and Order of the Court, this claim was voluntarily dismissed without prejudice on May 2, 2012.

finds this case instructive in resolving the filed rate doctrine issue, notwithstanding this distinction.  With respect to the filed rate doctrine, the Third Circuit made clear in <u>Alston</u> that "the filed rate doctrine simply does not apply" in circumstances where plaintiffs "challenge [the defendant's] allegedly wrongful conduct, not the reasonableness or propriety of the rate that triggered that conduct."  585 F.3d at 765.

To the extent that Defendant asserts that <u>Stevens v. Union Planters Corp.</u> — as opposed to the Third Circuit's opinion in <u>Alston</u> — controls here and dictates the result that the filed rate doctrine bars all of Plaintiff's claims, the Court pauses to note Defendant's failure to cite a related case, <u>Stevens v. Citigroup, Inc.</u>, No. 00-3815, 2000 WL 1848593 (E.D. Pa. Dec. 15, 2000).

<u>Citigroup</u> involved a claim by the same plaintiff from <u>Union Planters</u> regarding the same mortgage and force-placed hazard insurance that was challenged as excessive in <u>Union Planters</u>. Citigroup was the prior mortgagee and servicer on the plaintiff's loan, and Union Planters was subsequently assigned all rights, title, and interest in plaintiff's mortgage by Citigroup. However, in <u>Citigroup</u>, which was decided approximately four months after <u>Union Planters</u> by the same district judge, the court concluded that, unlike in <u>Union Planters</u>, the filed rate doctrine

_____

(Order Granting Joint Stipulation [Doc. No. 12] 1.)

did not bar the plaintiff's claims for breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, constructive fraud, misrepresentation, fraudulent misrepresentation, and unfair trade practices.  Citigroup, 2000 WL 1848593, at *1, 3.  The court in Citigroup found that Citigroup had inaccurately characterized the plaintiff's complaint as one challenging the insurance purchased on the plaintiff's behalf as excessive in order to rely on the filed rate doctrine.  Id. at *3.

The court, after reviewing the facts alleged in the plaintiff's complaint, determined that "plaintiff d[id] not challenge the mortgagee purchased, hazard insurance as excessive. Rather, plaintiff allege[d] that [Citigroup's] decision to purchase mortgagee purchased hazard insurance at a rate that far exceeded the mortgagor purchased hazard insurance without notice to the plaintiff was a breach of the mortgage contract, and was an action taken in violation of defendants' obligation to proceed with good faith and fair dealing."  Id.  Concluding that the plaintiff in Citigroup did not challenge the excessiveness of any one rate of insurance, but instead challenged that manner in which Citigroup chose the insurance at issue, the court allowed plaintiff's claims to proceed past the motion to dismiss stage. Id.

While subtle distinctions exist between the claims alleged

by the plaintiff in Citigroup and Plaintiff in this action, the
essential nature of the complaints are the same: both individuals
challenge the manner in which their mortgagees/loan servicers
chose the specific force-placed insurance at issue.  Accordingly,
the Court finds that Defendant's reliance on Union Planters is
misplaced because it has mischaracterized the essential nature of
Plaintiff's claims.  The claims set forth in the Amended
Complaint in this action are more akin to those in Citigroup, and
thus the Court is not persuaded that the analysis applied in
Union Planters should apply here.

Furthermore, Defendant contends that Alston "has no
application to this case" because Plaintiff seeks compensatory,
consequential, and general damages, along with restitution and
disgorgement, included refunds and/or credits of all unfair,
unlawful or otherwise improper force-placed insurance premiums.
(Reply Br. in Supp. of Def.'s Mot. to Dismiss Pl.'s First Am.
Compl. [Doc. No. 30] (hereinafter, "Def.'s Reply"), 3-4.)
According to Defendant, allowing Plaintiff to proceed with these
claims would run afoul of the dual purposes behind the filed rate
doctrine.  (Id. at 5.)  First, with respect to the non-
justiciability purpose of the doctrine, Defendant argues this
purpose would be contravened because Plaintiff is asking the
Court to step into the shoes of the Pennsylvania Department of
Insurance to decide if the premiums he paid were unlawful, unfair

or otherwise improper.  (Id.)  Defendant further argues that, if
the Court issues a refund or credit to Plaintiff for any portion
of the premiums paid, he would end up paying a lesser rate than
other consumers thereby also contravening the non-discrimination
purpose of the doctrine.[7]  (Id.)

Defendant, however, apparently does not recognize is that
Plaintiff not challenging the rate itself or the mechanism by

---

[7] The Court is not persuaded at this early stage of the
litigation by Defendant's argument that simply because Plaintiff
seeks refunds and restitution of insurance premiums paid, the
filed rate doctrine is implicated and bars Plaintiff's claims in
their entirety.  As discovery may well reveal, the precise relief
sought here – referred to generically as refunds, credits, or
restitution – likely is not meant to seek a refund of the
difference between the force-placed insurance policy premium and
the more affordable policy premiums obtained independently by
homeowners.  Rather, it appears from the Amended Complaint that
the refunds or credits Plaintiff and other class members might
seek may, for example, be based upon the extent to which they
were charged for retroactive coverage on backdated policies
covering time periods during which no risk of loss occurred.

The Court expresses no opinion on the meritoriousness of
such a claim for relief, but simply notes that it is an
alternative explanation for seeking refunds or credits which,
absent authority to the contrary, does not directly challenge the
rate that was paid, but rather the time periods for which it was
paid.  In light of this consideration, the Court does not apply
the filed rate doctrine simply based on the form of relief sought
by Plaintiff at the pleading stage.

Moreover, Plaintiff represents in a supplemental submission
to the Court [Doc. No. 42], that he "is not seeking refunds of
premiums paid for valid insurance or credits against future
insurance policies as a result of improper rate calculations.
Instead, Plaintiff seeks to recover amounts paid to/charged by
Defendant as the loan servicer ... that are unrelated to the
propriety of the rate approved and directly related to the
challenged conduct regarding abuse of the authority to force-
place insurance to improperly generate profits[.]"  (Pl.'s Resp.
[Doc. No. 42] 4.)

which it was determined by the force-placed insurance provider, all of which are regulated by the Pennsylvania Department of Insurance.  Rather, Plaintiff is challenging the lawfulness and purpose of payments that PHH Mortgage received in the form of commissions, kickbacks, reinsurance premiums, or other financial benefits, pursuant to several alleged pre-arranged agreements designed to maximize profits for Defendant.  Defendant, the party bearing the burden to show dismissal is warranted under this doctrine, has not presented any authority to demonstrate that such pre-arranged side agreements are similarly filed with, approved by, or regulated and monitored in some way by a governing regulatory agency, such as the Department of Insurance, much like the filed rates for hazard insurance policies themselves.

Without such authority, it appears to the Court at this time that any payments made to Defendant PHH Mortgage pursuant to such agreements are not subject to the regulatory scheme in the same way that insurance rates are.  Therefore, Plaintiff should not be barred under the filed rate doctrine from challenging conduct which is not otherwise addressed by a governing regulatory agency, particularly where Defendant bears the burden on the issue of dismissal.  See Williams v. Duke Energy Intern., Inc., 681 F.3d 788, 797 (6th Cir. 2012) (reversing district court's determination that filed rate doctrine applied to bar plaintiffs'

claims where the plaintiffs did not challenge the reasonableness
of the filed rates themselves but instead challenged the
lawfulness and purpose of payments defendant's affiliate made
outside of the rate scheme pursuant to side agreement not filed
with any regulatory agency – even though these payments
ultimately impacted the rates paid by plaintiffs); cf. Clark v.
Prudential Ins. Co. of America, 736 F. Supp. 2d 902, 916-19
(D.N.J. 2010) (finding that filed rate doctrine barred
plaintiff's claims regarding health insurance premium rates where
the conduct complaint of by plaintiff was regulated by the New
Jersey Department of Banking and Insurance).

     Here, it is apparent to the Court that Defendant, in making
its argument under the filed rate doctrine, has engaged in a
selective reading of Plaintiff's Amended Complaint.  While
Plaintiff uses words and phrases in the Amended Complaint such
as: "unauthorized, unjustified and unfairly inflated costs to the
borrower for force-placed hazard insurance"; "substantial and
inappropriately high cost[s] to the borrower"; "purchasing
unconscionable high-priced insurance policies"; and by
"[a]ssessing excessive, unreasonable, and unnecessary insurance
policy premiums against Plaintiff and the Class [while]
misrepresenting the reason for the cost of the
policies[,]" (see Am. Compl. ¶¶ 4-6, 81(d), 96(d)), these
references make up only a small portion of Plaintiff's Amended

Complaint.

Relying heavily on these infrequent references, Defendant overgeneralizes the nature of Plaintiff's allegations and claims that Plaintiff is challenging the rate he was charged for force-placed hazard insurance. (Def.'s Br. 7-8.) However, having fully reviewed Plaintiff's thirty-one (31) page complaint and all of its attendant one hundred one (101) paragraphs, it appears to the Court that Defendant has lost sight of the forest for the trees. A full and fair reading of the entirety of Plaintiff's Amended Complaint, on the other hand, manifestly demonstrates that Plaintiff complain of the manner and method Defendant PHH Mortgage utilized in purchasing force-placed hazard insurance through pre-arranged agreements with providers like American Security, which allegedly resulted in improper financial benefits to Defendant PHH Mortgage.

For example, the Amended Complaint sets forth the following relevant assertions regarding the nature of Plaintiff's claims:

> 4.   Plaintiff challenges, among other things and as further described herein, Defendant's practice of purchasing force-placed hazard insurance from a provider pursuant to an agreement that returns a financial benefit to Defendant and/or its affiliates that is unrelated to any contractual or other *bona fide* interest in protecting PHH's interest in the loan, and which results in unauthorized, unjustified and unfairly inflated costs to the borrower for force-placed hazard insurance in violation of law.
>
> 5.   Defendant has engaged in unlawful, abusive and unfair practices with respect to force-placed insurance, including, among others and as

19

described in further detail below: (a) providing
force-placed insurance according to pre-arranged
agreements with insurers, ... , at a substantial
and inappropriately high cost to the borrower;
(b) receiving fees, payments, commission and/or
other things of value from providers of
force-placed insurance; and (c) forcing borrowers
to pay for unnecessary insurance.

6. Defendant's unlawful actions include, *inter alia*,
... entering into pre-arranged agreements that
yield exorbitant force-placed insurance in order
to maximize their own profits to the detriment
of borrowers, backdating the force-placed
policies to charge for retroactive coverage, and
giving and/or receiving "commissions" or
"kickbacks" for the procurement of the
force-placed policies. ...

7. ... Defendant has also negotiated deals with
force-placed insurance providers, ... pursuant to
which Defendant, and/or its subsidiaries/
affiliates: (a) receive a portion of the premiums
for each force-placed insurance policy purchased
for a borrower; and/or (b) assume a portion of
the force-placed insurance policies originally
written by force-placed insurance providers
without any real or commensurate transfer of
risk.

8. This scheme constitutes unfair, unlawful, and
unconscionable business practices and is in
violation of the mortgage contracts of Plaintiff
and the Class. ...

10. In the present action, Plaintiff is not
challenging Defendant's *ability* to force-place
insurance policies and to charge fees/premiums
for the same. Rather, Plaintiff challenges the
*manner* in which Defendant manipulated the
force-placed insurance process for its own
financial gain.

11. At issue in this case is whether Defendant has
been unjustly enriched, breached the express
and/or implied terms of the mortgage contract
(including the covenant of good faith and fair
dealing), and/or violated state statutory
provisions by unreasonably, unconscionably and
unlawfully exercising its contractual discretion
to manipulate the force-placed insurance process
so as to obtain financial benefits. In this
action, Plaintiff challenges Defendant's unlawful

conduct ...

25.   ... PHH Mortgage and/or its affiliates received a
      commission or other financial benefit from
      American Security in connection with Plaintiff's
      force-placed insurance policy. ...

31.   ... PHH Mortgage routinely exceeds the bounds of
      reasonableness and the spirit, intent and letter
      of the mortgage contract by force-placing
      insurance in a manner and in amounts that are not
      required to protect the lender's interest in the
      property ...

52.   Motivated by the lucrative financial incentive
      associated with force-placing insurance, ...
      Defendant has commonly required borrowers to pay for
      unnecessary insurance coverage. Such examples
      include, without limitation: (a) backdating
      force-placed insurance policies so that they cover
      time periods already passed when the policy is
      placed, thus requiring borrowers to pay for
      retroactive coverage for by-gone periods of time for
      which no risk of loss any longer exists; and (b)
      requiring borrowers to pay for force-placed
      insurance policies covering periods of time
      following a lapse of previous insurance despite the
      fact that the lender's interest in the property was
      covered for such time pursuant to either a "standard
      mortgage clause," or, ... Lender's Loss Payable
      Endorsement in the previous policy, either of which
      continues the Lender's coverage following a lapse
      for non-payment of premium.

(Am. Compl. ¶¶ 4-8, 10-11, 25, 31, 52) (emphasis in original,

footnote omitted).

        If true, these allegations, when read in conjunction with

one another, interpreted in the context of the entirety of the

Amended Complaint, and viewed in the light most favorable to

Plaintiff, lead the Court to conclude that Defendant's assertion

that Plaintiff is simply challenging the rates he paid for force-

placed hazard insurance is meritless.  In fact, Defendant itself

characterizes Plaintiff's claims as follows: "[t]he crux of

[P]laintiff's [Amended] Complaint is that PHH Mortgage engaged in a scheme with American Security to receive 'improper financial benefits' in the form of kickbacks, reinsurance premiums, and/or commissions which has resulted in excessive lender-placed premiums being charged to consumers."  (See Def.'s Br. 6) (emphasis added).

Under Alston, which is controlling precedent in this Circuit, the Amended Complaint clearly complains of Defendant PHH Mortgage's conduct in allegedly improperly receiving various financial benefits through the force-placed insurance process, and cannot fairly be read as a direct challenge to the reasonableness of the rates charged by the force-place insurance providers, none of whom are even parties to this suit. Therefore, at the pleading stage of this litigation, the filed rate doctrine cannot serve as a basis to dismiss the entirety of Plaintiff's Amended Complaint.[8]

---

[8] The Court declines to dismiss all of Plaintiff's claims at this stage of the litigation based on the filed rate doctrine where an Initial Scheduling Conference before the Magistrate Judge has yet to occur and court ordered discovery has not yet commenced.  However, if it becomes more clear at a later stage of these proceedings that Plaintiff is, in fact, merely challenging the reasonableness of the rate of the force-placed insurance policy, then the parties may address this issue again on summary judgment.  Stevens v. Citigroup, Inc., No. 00-3815, 2000 WL 1848593, at *3 n.2 (E.D. Pa. Dec. 15, 2000) ("While the Court will not dismiss plaintiff's Complaint at this juncture, should it become more clear that plaintiff's merely challenge the excessiveness of the mortgagee placed hazard insurance, the parties may confront this issue again on summary judgment.")
For now though, the Court finds that Plaintiff has alleged

This finding is consistent with a number of other federal courts which have considered this issue, and the Court is persuaded by the reasoning of these opinions that Defendant's motion to dismiss based on the filed rate doctrine must be denied.  See, e.g., Ellsworth v. U.S. Bank, N.A., --- F. Supp. 2d ----, No. 12-02506, 2012 WL 6176905, at *13-14 (N.D. Cal. Dec. 11, 2012) (rejecting American Security's argument that claims for breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment, among others, were barred under the filed rate doctrine because plaintiff did "not challenge the rates or the premiums he paid but instead challenge[d] the alleged kickbacks[,]" and noting that "[j]ust because the damages are based on increased costs incurred as a result of the alleged kickback scheme does not transform a challenge to conduct and practices into a challenge to the premiums"); Stevens v. Citigroup, Inc., No. 00-3815, 2000 WL 1848593, at *2-3 (E.D. Pa. Dec. 15, 2000) (allowing claims for breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment, among others, to proceed beyond the motion to dismiss stage despite defendants' argument that such claims were barred by filed rate doctrine because the plaintiff did not challenge the excessiveness of any one insurance rate but instead

---

sufficient facts, to raise a reasonable expectation that discovery will reveal evidence supporting Plaintiff's claims. See Phillips, 515 F.3d at 234.

challenged that manner in which Citigroup selected the force-placed insurance at issue); see also Kunzelman v. Wells Fargo Bank, N.A., No. 9:11-cv-81373, 2012 WL 2003337, at *3 (S.D. Fla. June 4, 2012) ("Plaintiff's claims are not barred by the filed rate doctrine because he is not challenging the rates filed by Defendants' insurers.  Rather, Plaintiff challenges the manner in which Defendants select insurers, the manipulation of the force-placed insurance process, and the impermissible kickbacks that were included in the premiums."); Abels v. JPMorgan Chase Bank, N.A., 678 F. Supp. 2d 1273, 1277 (S.D. Fla. 2009) (rejecting filed rate doctrine argument because "Plaintiffs [were] not complaining that they were charged an excessive insurance rate, they [were] complaining that the defendant bank acted unlawfully when it chose this particular insurance company and this particular rate"); Gipson  v. Fleet Mortg. Grp., Inc., 232 F. Supp. 2d 691, 707 (S.D. Miss. 2002) ("The court is not persuaded that the filed rate doctrine bars a claim such as this, which is not so much a challenge to the rate itself as it is to the lender's right under the lending contract to place insurance in such a manner as to cause its borrowers' payment of unnecessary fees.")

## B.   Breach of Contract[9]

---

[9] In addressing Plaintiff's breach of contract and related claims, the parties seem to agree for purposes of this motion that Pennsylvania law applies.

Defendant makes three distinct arguments in support of dismissal of Count One of Plaintiff's Amended Complaint for breach of contract.  First, Defendant argues that Plaintiff fails to identify any specific duty imposed by the mortgage that Defendant breached and improperly relies on a "manufactured" duty to allege that Defendant can obtain force-placed insurance "only to the extent reasonably necessary" to protect its interest. (Def.'s Br. 8-10.)  Defendant claims that these allegations "fail to state a claim for breach of contract in light of the discretion afforded PHH Mortgage under the mortgage contract." (Id. at 10.)  Second, Defendant contends that Plaintiff's allegations that "PHH Mortgage breached the implied covenant of good faith and fair dealing cannot, standing alone, save his improperly-pled breach of contract claim" where Plaintiff fails to plead a breach of a specific duty imposed by the contract. (Id. at 11-12.)  Finally, Defendant asserts that, even if Plaintiff had adequately pled a breach of contract claim, that claim would still be subject to dismissal under the voluntary payment doctrine.  (Id. at 12-13.)

"Pennsylvania law requires that a plaintiff seeking to proceed with a breach of contract action must establish '(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages.'"  Ware v. Rodale Press, Inc., 322 F.3d 218, 225 (3d

Cir. 2003) (citing CoreStates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)).  Defendant PHH Mortgage's first two arguments primarily focus on the second element – the breach of a duty imposed by the contract.  To the extent Defendant argues that Plaintiff's Amended Complaint fails to allege the breach of an express duty set forth in the mortgage, the Court agrees with Defendant and grants the motion to dismiss with respect to a breach of contract claim founded upon breach of an express duty.

Defendant correctly asserts Plaintiff was required to maintain hazard insurance on his property, that he allowed the Lititz Policy to lapse, and that this lapse triggered PHH Mortgage's right to obtained force-placed hazard insurance pursuant to the terms of Section Five of the mortgage.  Moreover, Section Five of the mortgage clearly sets forth the attendant disadvantages to force-placed insurance and the discretion afforded to PHH Mortgage under Section Five.  Reviewing the allegations contained in Count One of the Amended Complaint, the Court finds that Plaintiff does not sufficiently allege the breach of a specific duty outlined in the mortgage agreement.

Rather, it appears to the Court that the entirety of Count One is, at its core, a breach of contract claim based on Defendant's alleged breach of the implied covenant of good faith and fair dealing.  Relying on Sheinman Provisions, Inc. v.

National Deli, LLC, No. 08-cv-453, 2008 WL 2758029, at *3 (E.D. Pa. July 15, 2008), Defendant takes the position that, in order to allege a claim for breach of the implied covenant of good faith and fair dealing, Plaintiff "must allege facts to establish that a contract exists or existed, including its essential terms, that defendant failed to comply with the covenant of good faith and fair dealing by breaching a specific duty imposed by the contract *other than the covenant of good faith and fair dealing*, and that resultant damages were incurred by plaintiff."  See Sheinman, 2008 WL 2758029, at *3 (emphasis in original). According to Defendant, because Plaintiff has not sufficiently alleged the breach of an express duty outlined by the contract, he cannot maintain an independent action for breach of the implied covenant of good faith and fair dealing.

The Court, however, disagrees.  Sheinman is not an entirely accurate representation of the law regarding a breach of contract claim founded upon a breach of the implied covenant of good faith and fair dealing, and Defendant's reliance upon this case is thus misplaced.  At least one other federal court has found "that the statement in Sheinman [requiring the breach of a specific duty imposed by the contract other than the covenant of good faith and fair dealing] was not supported by the precedent upon which it purported to rely."  Kamco Indus. Sales, Inc. v. Lovejoy, Inc., 779 F. Supp. 2d 416, 426 n.8 (E.D. Pa. 2009).

As explained in <u>Kamco</u>, the statement "that a breach of the covenant of good faith is not an independent cause of action was simply to clarify that 'a breach of such covenant is a breach of contract action.' ... [meaning that] a plaintiff pursuing an implied duty theory must bring a breach of contract action, not an independent cause of action for breach of the covenant of good faith and fair dealing." <u>Id.</u> Similarly to the court in <u>Kamco</u>, this Court has not found any Pennsylvania state court decisions imposing the requirement outlined by the district court in <u>Sheinman</u> that a plaintiff plead the defendant's failure to comply with the covenant of good faith and fair dealing by alleging the breach of a specific contractual duty other than the covenant of good faith and fair dealing itself. <u>See Kamco</u>, 779 F. Supp. 2d at 426 n.8. Accordingly, this Court rejects Defendant's reliance on <u>Sheinman</u> with respect to the manner in which a claim for breach of the implied covenant of good faith and fair dealing must be pled to survive a motion to dismiss.

Other courts interpreting Pennsylvania contract law have more accurately explained, that "[w]hether express or implied, the covenant of good faith and fair dealing acts as a term of the contract, and that covenant arises from the contract itself." <u>Zaloga v. Provident Life and Acc. Ins. Co. of Am.</u>, 671 F. Supp. 2d 623, 630 (M.D. Pa. 2009) (citing <u>Ash v. Cont'l Ins. Co.</u>, 593 Pa. 523, 932 A.2d 877, 884 (2007); <u>Birth Center v. St. Paul</u>

28

Companies, Inc., 787 A.2d 376, 385 (Pa. 2001)).  Therefore, a
breach of the covenant sounds in contract, as opposed to tort,
because the covenant arises from the contract and not as a result
of the mere relationship of the parties - as, for example, a
fiduciary duty would.  Zaloga, 671 F. Supp. 2d at 631.  "There
is, however, no independent cause of action for a breach of the
covenant of good faith and fair dealing -arising in contract- in
Pennsylvania because *such a breach is merely a breach of
contract*."  Id. (citing Birth Center, 787 A.2d at 385-86)
(emphasis added); accord Designers N. Carpet, Inc. v. Mohawk
Indus., Inc., 153 F. Supp. 2d 193, 196 (E.D.N.Y. 2001) ("A claim
for breach of an implied covenant of good faith and fair dealing
does not provide a cause of action that is separate and different
from a breach of contract claim.  Rather, breach of that duty is
merely a breach of the underlying contract.").

Accordingly, in order to survive Defendant's motion to
dismiss the breach of contract claim founded upon a breach of the
implied covenant of good faith and fair dealing, Plaintiff need
only allege facts sufficient to support a claim that the implied
covenant was breached, as opposed any other specific contractual
duty.  According to Plaintiff, he has alleged "that PHH Mortgage
exercised its discretion to force-place insurance under the
mortgage contract in an unreasonable manner" in a variety of
different ways and these allegations are sufficient to state a

claim for breach of the implied covenant of good faith and fair dealing.  (Pl.'s Opp'n 14.)

The parties agree that the covenant of good faith and fair dealing is implied in every contract under Pennsylvania law. (Def.'s Br. 11; Pl.'s Opp'n 13); see also Kaplan v. Cablevision of Penn., 671 A.2d 716, 721-22 (Pa. Super. Ct. 1996) (noting the court's prior adoption of Section 205 the Restatement (Second) of Contracts which "provides: 'Every contract imposes on each party a duty of good faith and fair dealing in its performance and its enforcement.'")  Moreover, both state and federal courts in Pennsylvania have recognized that "'[t]he covenant of good faith may also be breached when a party exercises discretion authorized in a contract in an unreasonable way.'"  Montanez v. HSBC Mortg. Corp. (USA), ---- F. Supp. 2d ----, No. 2:11-cv-4074-JD, 2012 WL 2899371, at *5 (E.D. Pa. July 17, 2012) (citing Phila. Plaza-Phase II v. Bank of Am. Nat'l Trust & Savings Assoc., No. 3745 APRIL TERM 2002, 2002 WL 1472337, at *6 (Pa. Ct. Com. Pl. Phila. Cnty. June 21, 2009); Burke v. Daughters of the Most Holy Redeemer, Inc., 344 Pa. 579, 26 A.2d 460, 461 (1942)).

With respect to force-placed hazard insurance, Section Five of the mortgage provides in pertinent part:

> If Borrower fails to maintain any of the coverages
> described above, Lender may obtain insurance
> coverage, at Lender's option and Borrower's
> expense.  Lender is under no obligation to
> purchase any particular type or amount of
> coverage.  Therefore, such coverage shall cover

> Lender, but might or might not protect Borrower,
> Borrower's equity in the Property, or the contents
> of the Property, against any risk, hazard or
> liability and might provide greater or lesser
> coverage than was previously in effect.  Borrower
> acknowledges that the cost of the insurance
> coverage so obtained might significantly exceed
> the cost of insurance that Borrower could have
> obtained.

(Ex. 4 to Am. Compl. [Doc. No. 19-1] ¶ 5.)  Interpreting the identical mortgage contract language, the district court in Montanez recognized that "[t]he purpose of a force-placement clause [such as Section Five of the mortgage] is to protect the lender's interest in the property securing the mortgage loan." 2012 WL 2899371, at *6.

Here, Plaintiff has alleged sufficient facts to support a claim that Defendant breached the implied covenant of good faith and fair dealing imposed on the parties to this mortgage by allegedly exercising its discretion under the contract in an unreasonable manner and in bad faith through participation in a "scheme" to receive improper financial benefits through kickbacks, commissions, reinsurance premiums, and the like, and by manipulating the force-placed insurance process outlined in the contract to maximize its own profits.[10]  In light of the fact that the language of the mortgage in the present case is

---

[10] Again, the Court does not express any opinion on the meritoriousness of such a claim, but simply finds that taking the factual allegations of the Amended Complaint as true and viewing them in the light most favorable to Plaintiff, the claim may proceed past the motion to dismiss stage of this litigation.

identical in all respects to the contractual language in <u>Montanez</u> regarding force-placed insurance and the discretion of the mortgagee – PHH Mortgage, the Court finds <u>Montanez</u> highly persuasive and adopts its reasoning here to deny Defendant's motion to dismiss Plaintiff's breach of contract claim.

This Court similarly finds, as the district court in <u>Montanez</u> found, that although Section Five of the mortgage did not require Defendant PHH Mortgage "to obtain the cheapest or most cost-effective insurance available, it was not entitled to use its discretion to obtain secret kickbacks on policies or charge plaintiffs for insurance covering periods of time that had passed without damage occurring to the property.  Such behavior contravened plaintiffs' reasonable expectations [under the mortgage]."  2012 WL 2899371, at *6.  Plaintiff's allegations in the Amended Complaint, accepted as true, are adequate to raise a reasonable expectation that discovery may reveal evidence supporting Plaintiff's breach of contract claim founded upon a breach of the implied covenant of good faith and fair dealing.  Thus, at this early stage of the litigation, the Court denies Defendant's motion to dismiss with respect to this claim.[11]

_____

[11] The Court also rejects Defendant's argument that this claim is barred under the voluntary payment doctrine.  The "voluntary payment doctrine" provides that money paid under a claim of right by one who has knowledge of the relevant facts cannot be recovered on the ground that the claim was illegal unless the payment was made under compulsion. See <u>Wilson v. School District of Phila.</u>, 328 Pa. 225, 195 A. 90, 100 (1937);

C.   **Unjust Enrichment**

Defendant seeks to dismiss Count II of the Amended Complaint for unjust enrichment on the basis that Pennsylvania law precludes this quasi-contractual claim where the relationship between the parties is founded on an express written agreement. (Def.'s Br. 13.)  Plaintiff counters that he is permitted to plead in the alternative and cannot be forced to choose between a remedy for a breach of contract claim or one for unjust enrichment at the motion to dismiss stage.  (Pl.'s Opp'n 21-22.)

Under Pennsylvania law, a party is prohibited from recovering under the theory of unjust enrichment if the relationship between the parties is governed by written contract. See Wilson Area Sch. Dist. v. Skepton, 895 A.2d 1250, 1254 (Pa. 2006) ("[I]t has long been held in this Commonwealth that the doctrine of unjust enrichment is inapplicable when the relationship between the parties is founded upon a written agreement or express contract.").  While it is generally true

_____

Acme Markets, Inc. v. Valley View Shopping Center, Inc., 342 Pa. Super. 567, 493 A.2d 736, 737 (1985).

However, the voluntary payment doctrine is an affirmative defense under Pennsylvania state law.  Hamid v. Stock & Grimes, LLP, --- F. Supp. 2d ----, 2012 WL 2740869, at *3 (E.D. Pa. July 09, 2012).  At this stage of the proceedings, it is not clear from the face of the Amended Complaint if Plaintiff had full knowledge of the relevant facts when he made payments under the force-placed insurance policy.  Therefore, this defense is not properly considered at the motion to dismiss stage of this case when the factual record is insufficient to determine its viability.

that a plaintiff may allege alternative claims for breach of contract and unjust enrichment, despite the legal impossibility of recovery under both, a plaintiff may plead breach of contract and unjust enrichment claims in the alternative only "where an express contract cannot be proven." Lugo v. Farmers Pride, Inc., 967 A.2d 963, 970 (Pa. Super. Ct. 2009).

Here, Defendant does not dispute the validity of the mortgage contract and contends that the existence of the mortgage precludes Plaintiff's unjust enrichment claim. (Def.'s Br. 13-14.)  Despite Plaintiff's argument to the contrary, the substantial weight of case law in both federal and state courts in Pennsylvania demonstrates that Plaintiff's claim for unjust enrichment must be dismissed in light of the express contract between the parties here.[12]  See Montanez, 2012 WL 2899371, at *8 (dismissing plaintiffs' unjust enrichment claim, pled in the alternative to its breach of contract claim, in a force-placed insurance action against a mortgage company where there was no dispute that the mortgage contract was valid and enforceable).

### D.  New Jersey CFA Claim

Finally, Defendant seeks dismissal of Plaintiff's CFA claim on the basis that Pennsylvania, and not New Jersey, has the most

---

[12]In light of the dismissal of Plaintiff's unjust enrichment claim based on the existence of the parties express agreement, the Court need not address Defendant's argument that the claim is also barred as a result of Plaintiff's voluntary payments.

significant relationship to Plaintiff's purported consumer fraud claim and therefore, Plaintiff cannot bring his claim under the New Jersey CFA.  (Def.'s Br. 15.)  Defendant also claims that Plaintiff has failed to meet the pleading standard under Federal Rule of Civil Procedure 9(b) which requires Plaintiff's CFA claim to be pled with particularity.  (Id.)

A federal court sitting in diversity applies the choice of law principles of the forum state.  Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941). In P.V. v. Camp Jaycee, the New Jersey Supreme Court held that the "most significant relationship" test enunciated in the Restatement (Second) of Conflict of Laws applies to choice of law disputes arising under both contract and tort law.  197 N.J. 132, 136 (N.J. 2008).  New Jersey's "most significant relationship" test consists of two prongs.  First, a court must examine the substance of the potentially applicable laws in order to determine if an actual conflict exists.  Id. at 143 (citing Lebegern v. Forman, 471 F.3d 424, 430 (3d Cir. 2006)).  If there is no actual conflict, the analysis ends and the court applies the law of the forum state. See In re Ford Motor Co., 110 F.3d 954, 965 (3d Cir. 1997); Rowe v. Hoffman-La Roche, Inc., 189 N.J. 615, 621 (2007).

However, if a conflict is found, the Court must weigh the factors enumerated in the Restatement section corresponding to the plaintiff's cause of action, in this case, § 148 of the

Restatement (Second) of Conflict of Laws since Plaintiff's CFA claim sounds in fraud or misrepresentation.  Section 148 contemplates two scenarios in which a plaintiff asserts a claim for fraud or misrepresentation.  The first scenario involves misrepresentation claims in which the alleged harm suffered by a plaintiff and the action in reliance of any false representations occur in a single state.  The second scenario contemplated under § 148 is where a plaintiff's action in reliance takes place in a state other than where the false representations were made. Restatement (Second) of Conflict of Laws, § 148 (1971).

In the circumstance where the misrepresentation claims and the action in reliance thereon occur in a single state, the Restatement provides as follows:

> When the plaintiff has suffered pecuniary harm on account of his reliance on the defendant's false representations and when the plaintiff's action in reliance took place in the state where the false representations were made and received, the local law of this state determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

Id. § 148(1).

In the circumstance where two or more states are involved, the Restatement provides:

> When the plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made, the forum will

36

consider such of the following contacts, among others, as may be present in the particular case in determining the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties:

(a) the place, or places, where the plaintiff acted in reliance upon the defendants' representations,

(b) the place where the plaintiff received the representations,

(c) the place where the defendant made the representations,

(d) the domicile, residence, nationality, place of incorporation and place of business of the parties,

(e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and

(f) the place where the plaintiff is to render performance under the contract which he has been induced to enter by the false representations of the defendant.

Id. § 148(2).

Here, the parties agree and the Court also finds that an actual conflict exists between the consumer fraud laws of Pennsylvania and New Jersey.  (Def.'s Br. 17; Pl.'s Opp'n 25-27); see also Heindel v. Pfizer, Inc., 381 F. Supp. 2d 364, 373-74 (D.N.J. 2004) (finding that actual conflict exists between Pennsylvania's Unfair Trade Practices and Consumer Protection Law and New Jersey's Consumer Fraud Act).  Accordingly, the Court must determine under Section 148(2) regarding claims for fraud and misrepresentation whether Pennsylvania or New Jersey law on consumer fraud will apply.  However, the Court is unable to

37

proceed with such a fact-intensive choice-of-law determination at this early stage of the proceedings in light of the undeveloped factual record before the Court.  See Harper v. LG Electronics USA, Inc., 595 F. Supp. 2d 486, 490 (D.N.J. 2009).  Moreover, the parties essentially provide the Court with mere conclusory allegations regarding each of the factors the Court must consider, and fail to provide a sufficient factual foundation or controlling case law to support their assertions.  The Court will therefore decline to address the choice-of-law issue at this time, but will consider this issue at a later date when the parties have engaged in discovery and are better equipped to provide the Court with a fully developed record.[13]

**V.   CONCLUSION**

For the reasons set forth herein, Defendant PHH Mortgage's motion [Doc. No. 20] is granted in part and denied in part.  The motion is granted with respect to Plaintiff's claims for (1)

---

[13]The Court summarily rejects Defendant's argument that Plaintiff's Amended Complaint fails to plead the CFA claim with the requisite particularly required under Federal Rule of Civil Procedure 9(b).  Plaintiff has alleged the factual basis for the claims of fraud against Defendant with sufficient specificity to put Defendant on notice as to the precise misconduct with which it is charged — in this case, the improper manipulation of the force-placed insurance process through the use of pre-arranged agreements with force-placed insurance providers in order to maximize its own profits by receipt of kickbacks, commissions, reinsurance premiums, and other financial benefits.  See Harper, 595 F. Supp. 2d at 491.

breach of contract founded upon an express contractual duty as asserted in Count I of the Amended Complaint; and (2) unjust enrichment as asserted in Count II.  Those claims are dismissed from this action.

An Order consistent with this Opinion will be entered.


Dated: December 31, 2012          /s/ Noel L. Hillman
At Camden, New Jersey             NOEL L. HILLMAN, U.S.D.J.